UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE LYDELL HARRIS,<br>Plaintiff,<br>v.<br>ROY MAERSE, et al.,<br>Defendants. | Case No. 21-cv-00283-HSG<br>**ORDER SCREENING AMENDED COMPLAINT; SETTING BRIEFING SCHEDULE**<br>Re: Dkt. No. 8 |

Plaintiff, an inmate at San Quentin State Prison ("SQSP") has filed a *pro se* action pursuant to 42 U.S.C. § 1983. His amended complaint (Dkt. No. 8) is now before the Court for review under 28 U.S.C. § 1915A.

## DISCUSSION

**A.   Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."' *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

While Rule 8 does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement does not suffice. *Id.* To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.    Initial Complaint**

The Court screened the initial complaint and found that the following allegations stated cognizable claims for violation of the First Amendment's free exercise clause and Establishment clause, the Eighth Amendment, the Equal Protection Clause, and the Religious Land Use Institutionalized Persons Act ("RLUIPA"): defendants Muhammad and Jackson failed to provide Plaintiff with a diet consistent with his religious beliefs and adequate to meet his nutritional and health needs when they (1) provided vegetarian meals instead of the approved meat alternatives; and (2) conditioned his participation in the Religious Diet Program on refraining from consuming ramen soups which are allowed under his religion and necessary to maintain his health given the changes in the Religious Diet Program.  The Court dismissed with prejudice the claims regarding the grievance process; dismissed with prejudice defendants Carlton, Walker, Ballein, the Office of Appeals, Allen, Davis and Broomfield because their only involvement in the alleged constitutional violations was their participation in the grievance process; and dismissed defendants Maerse and Gary with leave to amend because the allegations regarding these defendants' participation in the grievance process failed to state cognizable constitutional claims. *See generally* Dkt. No. 6.

**C.    Amended Complaint**

Plaintiff has named as defendants the following former or current SQSP correctional officials:  former correctional food manager Roy Maerse, current correctional food manager Martha Garcia; assistant correctional food manager A. Gary; correctional lieutenant and community resource manager J. Carlton; Muslim chaplain Cleric Muhammad (K. Fasish); and

Christian chaplain Jackson. Dkt. No. 8 at 3.

The amended complaint makes the following allegations.

Plaintiff practices Soka Gakkai International (SGI) Nichiren Buddhism. According to Plaintiff's religious beliefs, his body is a temple that should not be polluted by consuming meat that contains genetically modified ingredients ("GMO"). In 2007, Plaintiff requested a GMO-free Buddhist diet. SQSP only offers three kinds of religious diets: vegetarian, Kosher, and Halal (Islamic). The Halal/Islamic Diet, also referred to as the Religious Meat Alternate Program ("RMAP"), does not include GMO meat. The SQSP Jewish chaplain at the time, Carole Hyman, authorized Plaintiff to participate in the RMAP because no Buddhist diet was available. Plaintiff's participation in the RMAP did not require him to follow the laws of any other religion. Pursuant to this decision, Hyman issued Plaintiff a Religious Diet Card.[1]

Plaintiff has been diagnosed with prediabetes and prehypertension. In 2011, an SQSP physician provided him with instructions on how to choose healthy options from the canteen including soups. In 2020, there was only one low sodium soup choice at the canteen, a chicken soup.

On August 7, 2017, Plaintiff complained to defendant Maerse that the frequent mystery meat substitutions for the approved religious meat alternative negatively affected his focus and strength, thereby affecting his religious practice. In response, defendant Maerse sent Plaintiff a departmental memo which described the religious meat alternative and when that diet was to be served to RMAP participants.

On March 1, 2018, Plaintiff visited the SQSP health clinic for light-headedness, headaches and lethargy. At this appointment, a nurse noticed an irregular heartbeat. That same day, Plaintiff filed a grievance alleging that SQSP was serving him vegetarian dinners instead of the approved religious meat alternatives, in violation of both state regulations and the departmental memo governing RMAP. Plaintiff alleged that the violations were negatively affecting his health and causing him to feel light-headed. Plaintiff has a history of fainting from lack of nutrients.

---

[1] Plaintiff states that card was issued in 2005, yet also states that he made the request in 2007. Dkt. No. 8 at 4.

1    On March 2, 2018, Plaintiff was seen again by SQSP medical staff.  The nurse again
2  noticed an irregular heartbeat.  SQSP doctor Grant advised Plaintiff to consume at least 2500
3  calories and 56 grams of protein daily.
4    On March 13, 2018, in connection with the grievance filed on March 1, 2018, defendant
5  Maerse stated that there had been a reduction in the amount of meat served to RMAP participants,
6  in accordance with the August 21, 2017 RMAP memo, and insisted that the food service complied
7  with state regulations.
8    On April 18, 2018, in connection with the grievance filed on March 1, 2018, defendant
9  Gary stated that vegetarian meals are allowable as part of the RMAP.
10    On April 19, 2018, meat was placed back on the RMAP menu and Plaintiff's health
11  improved.
12    On June 27, 2018, Plaintiff again had to visit the health clinic for dizziness and lethargy,
13  due to "breaches of his RMAP diet."
14    On May 16, 2019, defendant Muhammad (Fasish) issued Plaintiff a religious diet violation
15  for buying ramen soups with his own funds.
16    On or about July 1, 2019, Plaintiff filed another grievance alleging that prison officials had
17  violated the RMAP by failing to provide him with religious meat alternatives and instead serving
18  vegetarian meals.  Plaintiff listed at least 19 instances of being served food items that were not part
19  of the RMAP.  On July 17, 2019, Plaintiff was interviewed by defendant Gary with respect to this
20  grievance.  When Plaintiff asked defendant Gary whether empanadas served as part of the RMAP
21  contained GMO ingredients, she instructed him that he would need to file a lawsuit to obtain this
22  information and further stated, without providing any authority, that vegetarian meals were
23  interchangeable with RMAP dinners, especially when Halal meats were unavailable.  Defendant
24  Gary denied the grievance at the first level of review.  On August 22, 2019, defendant Garcia
25  denied Plaintiff's grievance at the second level, approving defendant Gary's first level denial.
26    In June 2020, SQSP suffered a COVID outbreak, resulting in SQSP prisoners being served
27  sack lunches and cold dinners, all of which were half the usual portion.  Plaintiff contracted
28  COVID.  Plaintiff's family was concerned for his health and sent him $200 so that he could buy

4

1   his own food from the canteen.  Plaintiff purchased soups with these funds.

2           On October 10, 2020, defendant Jackson informed that Plaintiff that he would receive
3   another RMAP violation for buying soups during the pandemic (June – August 2020).  Defendant
4   Jackson stated that if Plaintiff wished to avoid the violation being placed in his central file, he
5   could voluntarily withdraw from the RMAP.  Defendant Jackson informed Plaintiff that higher-
6   ups in Sacramento had ordered her to issue the violation, and denied that the violation was in
7   retaliation for a lawsuit settled by Plaintiff on October 1, 2020.

8           SQSP prison officials continue to violate the RMAP by substituting vegetarian meals in
9   place of religious meat alternatives.  Plaintiff believes that SQSP prison officials are attempting to
10  purge prisoners from the RMAP by constantly serving foods that are inconsistent with the RMAP
11  and by threatening prisoners with religious diet violations for buying soups.

12  **D.**     **Legal Causes of Action**

13      **1.**        **Free Exercise Clause**

14          Plaintiff argues that defendants Jackson and Muhammad (Fasish) are violating his right to
15  free exercise of religion because they have prohibited him from consuming ramen soups as part of
16  his religious diet and because they have decided that Plaintiff's religious beliefs are irrelevant to
17  whether he violated his religious diet; and that defendants Maerse, Garcia and Gary are violating
18  his right to free exercise of religion by substituting vegetarian meals for the religious meat
19  alternatives.  The Free Exercise Clause prohibits prison officials from burdening an inmate's
20  practice of his or her religion without any justification reasonably related to legitimate penological
21  interests.  *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  Inmates "have the right to
22  be provided with food sufficient to sustain them in good health that satisfies the dietary laws of
23  their religion."  *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).

24          Liberally construed, the amended complaint states a cognizable free exercise claim against
25  defendants Jackson and Muhammad (Fasish).  However, defendants Jackson and Muhammad
26  (Fasish)'s alleged refusal to consider Plaintiff's religious beliefs in determining whether he
27  violated the conditions for receiving a RMAP diet and refusal to allow Plaintiff to consume ramen
28  soups while a RMAP participant do not state a cognizable free exercise claim.  The Free Exercise

United States District Court
Northern District of California

Clause does not require that Plaintiff be allowed to participate in the RMAP diet under conditions consistent with his religious practices. Rather, the cognizable claim set forth in the amended complaint is whether defendants Jackson and Muhammad (Fasish) violated the Free Exercise Clause when they conditioned Plaintiff's ability to receive a GMO-free diet, which he claims is a tenet of his religion, on giving up the consumption of ramen soups he allegedly needs to eat to maintain his health given the limitations of the GMO-free diet available to him through the RMAP.

Plaintiff's allegations fail to state a cognizable free exercise claim against defendants Maerse, Garcia and Gary. According to the amended complaint, defendants Maerse, Garcia and Gary's involvement in the alleged constitutional violation was that, in the course of responding to Plaintiff's grievances, defendants Maerse, Garcia and Gary informed Plaintiff that vegetarian meals are an allowable RMAP meal option, which Plaintiff claims is an incorrect statement. Plaintiff claims that state and prison regulations and policies do not allow for vegetarian meals to be served as part of the RMAP. As explained in the Court's May 25, 2021 screening order, a prison official's denial of an inmate's grievance generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability under Section 1983. *See, e.g., Wilson v. Woodford*, No. 1:05–cv–00560–OWW–SMS, 2009 WL 839921, at *6 (E.D. Cal. Mar. 30, 2009) (ruling against prisoner on administrative complaint does not cause or contribute to constitutional violation); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner has no constitutional right to effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). Defendants Maerse, Garcia and Gary's participation in the grievance process, even if they made inaccurate statements in responding to the grievances, cannot constitute a violation of the Free Exercise Clause.[2]

---

[2] Moreover, the allegation that Plaintiff has been provided with vegetarian meals does not, by itself, state a violation of the Free Exercise clause. There is no allegation that his religion requires him to eat meat daily. The allegation that the provision of vegetarian meals as part of the RMAP violated state regulations or CDCR policy also does not state a violation of the Free Exercise clause. The Free Exercise clause is violated where the prison practice burdens the inmate's practice of his religion was burdened, and not because the prison practice violates state or prison

However, the factual allegations in the amended complaint state a possible free exercise claim for failing to provide Plaintiff with a nutritionally adequate diet consistent with his religious beliefs, specifically a GMO-free diet that provides sufficient nutrition and calories. This claim cannot be brought against defendants Maerse, Garcia and Gary because their only alleged interaction with Plaintiff was in responding to grievances. Nor could such a claim be brought against defendants Jackson or Muhammad (Fasish) because there is no allegation that they determine what meal options are available to Plaintiff. This free exercise claim is DISMISSED with leave to amend for Plaintiff to identify the appropriate defendant responsible for the failure to provide him with a nutritionally adequate diet consistent with his religious beliefs.

### 2. Establishment Clause Claim

The Supreme Court has interpreted the Establishment Clause to mean that the government may not promote or affiliate itself with any religious doctrine or organization and may not discriminate among persons on the basis of their religious beliefs and practices. *See County of Allegheny v. ACLU*, 492 U.S. 573, 590 (1989). For the purpose of an Establishment Clause violation, a state policy need not be formal, written or approved by an official body to qualify as state sponsorship of religion; however, the actions complained of must be sufficiently imbued with the state's authority to constitute state endorsement of religion. *See Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998) (correctional officer's evangelizing activities did not constitute state endorsement of religion because activities were not sanctioned in any way by policy of correctional facility or staff and were short-term and sporadic). A state regulation or practice "does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir. 1981).

Plaintiff argues that by determining that soups cannot be a part of Plaintiff's religious diet, defendants Muhammad (Fasish) and Jackson have become excessively entangled in his religious regulations and policies.

1   practice and have endorsed Islam over Buddhism by using Islamic law to determine what violates
2   a state statute, in violation of the Establishment Clause.  Plaintiff has failed to state a cognizable
3   Establishment Clause claim.  Plaintiff is alleging that by requiring Buddhists to refrain from
4   consuming ramen soups in order to obtain a GMO-free diet, defendants Jackson and Mohammad
5   have favored Islam over Buddhism.  However, to state a cognizable Establishment Clause claim,
6   the challenged policy must be sufficiently imbued with the state's authority to constitute state
7   endorsement of religion.  Requiring Buddhist inmates to choose between the available GMO-free
8   diet and the ability to consume ramen soups does not endorse Islam, although it may burden an
9   inmate's free exercise of religion.  Plaintiff's Establishment Clause claim is DISMISSED with
10  prejudice because amendment would be futile.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.
11  2000) (district court should grant leave to amend unless pleading could not possibly be cured by
12  the allegation of other facts).

### 3.     Eighth Amendment Claim

Plaintiff alleges that Defendants have violated the Eighth Amendment because they have placed his health at risk by replacing the religious meat alternatives with less nutritious vegetarian dinners and by preventing him from supplementing his diet with ramen soups.  Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment.  *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).  The amended complaint's allegation that defendants Muhammad and Jackson have refused to allow Plaintiff to supplement his meals with

8

foods adequate to meet his nutritional and health needs states a cognizable Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs. The amended complaint's allegations that defendants Muhammad and Jackson have replaced the religious meat alternatives with less nutritious vegetarian dinners does not state a cognizable Eighth Amendment claim because, as discussed above, there is no allegation that Muhammad and Jackson decide the meals that make up the RAMP diet. The Eighth Amendment claim arising out of the replacement of religious meat alternatives with less nutritious vegetarian dinners is DISMISSED with leave to amend for Plaintiff to identify the appropriate defendant responsible for ordering the substitution of the religious meat alternatives.

### 4. Equal Protection Claim

Plaintiff alleges that defendants Muhammad (Fasish) and Jackson have violated the Equal Protection Clause "by discriminating against Plaintiff because of his religious beliefs." ECF No. 8 at 16. The Court will liberally construe the amended complaint as alleging that defendants Muhammad (Fasish) and Jackson have violated the Equal Protection Clause by allowing Muslim and Jewish inmates to receive meals that comply with their religious beliefs without placing additional requirements upon them, but have conditioned Plaintiff's ability to receive a GMO-free diet, as required by his religion, by requiring him to adhere to Islamic dietary rules. Liberally construed, this states a cognizable equal protection claim. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (Equal Protection Clause requires that all persons similarly situated should be treated alike).

### 5. Religious Land Use and Institutionalized Persons Act ("RLUIPA") Claim

Plaintiff argues that defendants Muhammad (Fasish) and Jackson have violated RLUIPA by dictating his religious practice, and that all defendants have violated RLUIPA by violating their religious diet accommodation obligations. ECF No. 8 at 17. RLUIPA prohibits government from imposing "a substantial burden on the religious exercise of a person residing in [prison], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental

interest."). *See* 42 U.S.C. § 2000cc-1(a).

Liberally construed, Plaintiff's allegations state a cognizable RLUIPA claim against defendants Muhammad (Fasish) and Jackson. However, the cognizable RLUIPA claim is not that defendants Jackson and Muhammad (Fasish) are dictating Plaintiff's religious practice by refusing to allow him to consume ramen soups or that they have allegedly failed to abide by state and prison regulations and policies. The cognizable claim is that defendants Muhammad (Fasish) and Jackson have conditioned Plaintiff's ability to receive a GMO-free diet, as required by his religion, on forgoing ramen soups which he consumes for his health.

The amended complaint does not state a cognizable RLUIPA claim against defendants Garcia, Gary and Maerse. The only action taken by these defendants was responding to Plaintiff's grievances with the allegedly incorrect statement that the vegetarian meals served, in frequency and type, were allowable as part of the RMAP. Defendants Garcia, Gary and Maerse's response to the grievances, even if inaccurate, did not burden Plaintiff's exercise of his religion. The RLUIPA claim against defendants Garcia, Gary and Maerse is DISMISSED with prejudice because amendment would be futile.

**6.   California Regulations and Common Law Claims**

Plaintiff argues that Defendants violated their obligations under title 15 of the California Code of Regulations when they failed to provide him with "appropriate religious meals," and that defendants Muhammad (Fasish) and Jackson violated California contract law by implementing an ex post facto provision into the religious diet agreement that Plaintiff entered into with Chaplain Hyman. ECF No. 8 at 17. These allegations fail to state cognizable legal claims. Defendants' alleged violations of state law do not state a cognizable claim because there is no liability under Section 1983 for violating state law or prison policy. *See Owe v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.") (internal quotation marks and citation omitted); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (no liability under § 1983 for violating prison policy). There is no breach of contract claim because there is no contract. Chaplain Hyman did not enter into a

1  contract with Plaintiff when she issued him a religious diet card that allowed him to participate in
2  RMAP.  Assuming arguendo that Chaplain Hyman consented to Plaintiff's participation in the
3  RMAP, she did not receive consideration.  *See* Cal. Civ. § 1550 (essential elements of contract are
4  parties capable of consenting, their consent, a lawful object, and sufficient cause or consideration).
5  Moreover, any contract between Chaplain Hyman and Plaintiff would not be binding upon SQSP
6  or SQSP prison officials.  Defendants Muhammad (Fasish) and Jackson's actions therefore could
7  not breach any such contract.  The amended complaint's state law claims are DISMISSED with
8  prejudice because amendment would be futile.

## CONCLUSION

For the reasons set forth above, the Court orders as follows.

1. The amended complaint states cognizable claims against defendants Muhammad (K. Fasish) and Jackson for violation of the First Amendment's free exercise clause, the Eighth Amendment, the Equal Protection clause, and RLUIPA.

2. The Court DISMISSES with prejudice the Establishment Clause claims and the state law claims.  The Court also DISMISSES with prejudice defendants Roy Maerse, Martha Garcia, and A. Gary.

3. The Court DISMISSES with leave to amend the claim that the failure to provide Plaintiff with a nutritionally adequate diet consistent with his religious beliefs violates the Free Exercise Clause of the First Amendment, and the claim that replacing the religious meat alternative meals with vegetarian meals constituted deliberate indifference to his serious medical needs, in violation of the Eighth Amendment.  If Plaintiff wishes to file a second amended complaint that names the proper defendant(s) for these claims, he shall do so within twenty-eight (28) days of the date of this order.  The second amended complaint must include the caption and civil case number used in this order, Case No. C 21-002831566 HSG (PR) and the words "SECOND AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.  An amended complaint completely replaces the previous complaints.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).  Accordingly, Plaintiff must include in his second amended complaint all

1  the claims he wishes to present, including the claims found cognizable in this order, and all of the
2  defendants he wishes to sue, including the ones already served, and may not incorporate material
3  from the prior complaints by reference. Plaintiff may not change the nature of this suit by alleging
4  new, unrelated claims in the second amended complaint. Failure to file a second amended
5  complaint in accordance with this order in the time provided will result in Dkt. No. 8 remaining
6  the operative complaint, and this action proceeding against defendants Muhammad and Jackson on
7  the claims found cognizable herein. The Clerk shall include two copies of the court's complaint
8  form with a copy of this order to Plaintiff.

9      4. Defendants have not yet answered the complaint. Within twenty-one (21) days of
10  the date of this order, Defendants must file their answer to the operative complaint (Dkt. No. 8).

11      5. In order to expedite the resolution of this case, the Court orders as follows:

12          a. No later than 91 days from the date this order is filed, Defendants must file
13  and serve a motion for summary judgment or other dispositive motion. If Defendants are of the
14  opinion that this case cannot be resolved by summary judgment, Defendants must so inform the
15  Court prior to the date the motion is due. A motion for summary judgment also must be
16  accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what
17  is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir.
18  2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be
19  served concurrently with motion for summary judgment).[3]

20          b. Plaintiff's opposition to the summary judgment or other dispositive motion
21  must be filed with the Court and served upon Defendants no later than 28 days from the date the
22  motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment
23  provided later in this order as he prepares his opposition to any motion for summary judgment.

24          c. Defendants shall file a reply brief no later than 14 days after the date the

---

[3] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

12

1    opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No
2    hearing will be held on the motion.

3       6.    Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).  (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment.  *Woods*, 684 F.3d at 939).

       7.    All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendants, but once Defendants are represented by counsel, all documents must be mailed to counsel rather than directly to Defendants.

       8.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

       9.    Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the

Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

10. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED.**

Dated: 4/7/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge