UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE LYDELL HARRIS,<br>Plaintiff,<br>v.<br>CLERIC MUHAMMAD, et al.,<br>Defendants. | Case No. 21-cv-00283-HSG<br><br>**ORDER DENYING REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 17 |

Plaintiff, an inmate at San Quentin State Prison ("SQSP"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Now pending before the Court is Plaintiff's motion for a He also brings a motion for temporary restraining order ("TRO") and for preliminary injunction ("PI"). ECF No. 17. For the reasons set forth below, the Court DENIES Plaintiff's request for a TRO/PI.

**DISCUSSION**

Plaintiff has filed a motion for a temporary restraining order and preliminary injunction prohibiting Defendants from denying him the ability to supplement his GMO-free (RMAP) diet, that is required by his religion, with non-Halal or non-Kosher food items from the prison canteen or vendors. Dkt. No. 17.

**I.    Factual Background**

Below the Court reviews the relevant factual allegations set forth by the parties.

Plaintiff practices Soka Gakkai International (SGI) Nichiren Buddhism. According to Plaintiff's religious beliefs, his body is a temple that should not be polluted by consuming meat that contains genetically modified ingredients ("GMOs"). Dkt. No. 8 at 3-4; Dkt. No. 17 at 4, 10-11. In 2007, Plaintiff requested enrollment in a GMO-free Buddhist diet and was enrolled in

SQSP's halal/Islamic diet, also referred to as the Religious Meat Alternate Program ("RMAP"). Dkt. No. 8 at 4; Dkt. No. 17 at 4, 10-11. At the time he enrolled, Plaintiff was not required to follow Islamic law to participate in this religious diet, and was only required to follow the dietary restrictions set forth in his religion, Nichiren Buddhism. Dkt. No. 8 at 4; Dkt. No. 17 at 10. Plaintiff did not sign a Religious Diet Agreement (CDCR Form 3030-A). Dkt. No. 17 at 7.

Prison officials state that SQSP does not offer a GMO-free diet and that RMAP offers inmates meat that has been certified as halal, and not meat/food that is GMO-free. Prison officials further state that Plaintiff has never been offered GMO-free meals during his incarceration at SQSP. Dkt. No. 20-1 ("Shleffar Decl."), ¶ 27.

Since enrolling in the RMAP diet, when prison meals are inadequate, either in nutrition or portion size, Plaintiff has supplemented his diet with non-Halal purchases from the canteen, such as ramen soups, oysters, and beef products. Dkt. No. 8 at 5, 9-11; Dkt. No. 17 at 5. On May 16, 2019, defendant K. Fasih (Iman Muhammad) issued Plaintiff a religious diet violation for purchasing ramen soups. Dkt. No. 8 at 7. These religious diet violations are based on a violation of the Religious Diet Agreement (Form 3030-A) which Plaintiff did not sign. Dkt. No. 17 at 7. Plaintiff had never received a religious diet violation prior to this date, despite consuming ramen soups and other non-Halal items from the canteen. Dkt. No. 17 at 4. In summer 2020, COVID impacted prison feeding procedures, reducing the portions by half. Plaintiff supplemented his diet with ramen soups to maintain his health. Dkt. No. 8 at 10-11. On October 10, 2021, defendant Jackson issued Plaintiff a religious diet violation for purchasing ramen soups during June, July, and August 2020. Dkt. No. 8 at 11. She also informed him that if he wished to avoid the violation being placed in his Central file, he could voluntarily withdraw from the program, and she handed him a withdrawal form. Dkt. No. 8 at 11.

Plaintiff filed this case in January 2021, and has since received two additional religious diet violations. On July 7, 2021, Catholic chaplain Chavira, who is not a named defendant, issued a violation to Plaintiff on behalf of defendant Fasih for consuming beef steaks. Dkt. No. 17 at 6. On March 15, 2022, Chaplain Ang issued a second religious diet violation, this time for purchasing the following non-Halal items: ramen soups, beef salamis and oysters. Plaintiff was

2

informed that, unless he voluntarily withdrew from the RMAP diet, he would be expelled from the RMAP diet if he continued to purchase non-Islamic foods. Dkt. No. 17 at 7.

Plaintiff's inability to supplement the RMAP diet with items from the prison canteen has resulted in light-headedness, lethargy, and brain fog. Dkt. No. 17 at 7.

The Court has found that the operative complaint states cognizable claims against Muslim chaplain Clerk Muhammed (K. Fasih) and Christian chaplain Jackson for violating Plaintiff's rights under the First Amendment's free exercise clause, the Eighth Amendment, the Equal Protection Clause, and RLUIPA when they conditioned his ability to receive a GMO-free diet, which is mandated by his religion, on giving up ramen soups needed to maintain his health because of the deficiencies in the GMO-free diet provided via RMAP, yet allowed Jewish and Muslim inmates to receive meals consistent with their religious beliefs without imposing additional requirements. *See generally* Dkt. No. 13. Defendant Jackson has since retired. Dkt. No. 20-1 at 4.

## II.   Legal Standard

The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in any action involving prison conditions. *See* 18 U.S.C. § 3626(a). Section 3626(a)(2) permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but requires that such an order "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C. § 3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.* "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (noting that such remedies are extraordinary, and not granted as of right). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "The Ninth Circuit weighs these factors on a

sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)). Even where the balance tips sharply in the plaintiff's favor, however, the plaintiff must still make the threshold showing of likely success on the merits or a serious legal question. *See Leyva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[E]ven certainty of irreparable harm has never *entitled* one to a stay.") (emphasis in original). In addition, the issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## III.  Analysis

Plaintiff argues that he should be granted a temporary restraining order and preliminary injunction prohibiting Defendants from denying him the ability to supplement the GMO-free (RMAP) diet that his religion requires with non-Halal or non-Kosher food items from the prison canteen or vendors for the following reasons. He argues that he is likely to succeed on the merits because RLUIPA claims are subject to the strictest standard of review, thus indicating the highest probability of success; Defendants have not articulated in their responses to his grievances a compelling governmental interest as to why Plaintiff cannot supplement his GMO-free diet, as he was allowed to prior to 2019; the fact that Plaintiff was supplementing his GMO-free diet prior to 2019 indicates that there is no penological interest served by restricting Plaintiff to Halal items to receive the GMO-free diet; and an Equal Protection Clause violation makes the probability of success on the merits high, citing to *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). He argues that he is suffering irreparable harm because he is being threatened with being expelled from a diet that meets his religious dictates; the threats cause him emotional stress which can constitute irreparable injury; and, as a matter of law, the continued deprivation of

1  constitutional rights constitutes irreparable harm. He further argues that the balance of equities
2  favors him because granting the TRO/PI will maintain the status quo which Defendants have
3  endured for over a decade without suffering any harm whereas if Plaintiff is expelled from the
4  religious diet, he will suffer deprivation of his constitutional rights until at least 2023, which is
5  when this case is likely to reach its conclusion. Finally, Plaintiff argues that the TRO/PI will serve
6  the public interest because it is always in the public interest for prison officials to obey the law.
7  *See generally* Dkt. No. 17.

8  Defendants argue that the Court should deny the TRO/PI request because the Court lacks
9  jurisdiction to grant the relief sought for the following reasons. First, none of the named
10 defendants issued the 2021 and 2022 violations, and the Court does not have jurisdiction over the
11 individuals who issued the violations (Chaplains Chavria and Ang). Second, Plaintiff will not
12 suffer irreparable injury because Plaintiff is not receiving, and SQSP does not offer, a GMO-free
13 diet; and Plaintiff has not provided evidence that anyone has threatened to remove him from
14 RAMP for the recent violations despite the fact that he continues to purchase non-halal meat items
15 from the canteen. Third, Plaintiff has not established a likelihood of success on the merits because
16 RMAP is not a GMO-free diet; prison regulations do not require SQSP to provide Plaintiff a
17 GMO-free diet; and SQSP's decision to audit inmates' eligibility to be retained in their religious
18 diets meets the legitimate penological objective of reducing unnecessary costs incurred by
19 providing specialized meals to inmates who are not sincere with their religious dietary restrictions
20 and who are simply using the program to control the food they receive while serving their
21 sentences. Finally, the balance of equities does not favor Plaintiff and the relief sought would not
22 serve the public interest because granting the TRO/PI request would require SQSP to provide
23 Plaintiff a GMO-free diet and permit Plaintiff to violate the terms of the RMAP diet by purchasing
24 non-halal food items.

25 The Court DENIES Plaintiff's TRO/PI request. Plaintiff is unlikely to succeed on the
26 merits of his claim because the RMAP diet is not the GMO-free diet Plaintiff contends is required
27 by his religion. Expulsion from the RMAP diet would therefore not affect Plaintiff's ability to
28 observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA.

1    Similarly, because the RMAP diet does not fulfill the asserted dictates of Plaintiff's religion,
2    requiring Plaintiff to abide by the restrictions in the RMAP diet does not treat Plaintiff differently
3    from Jewish and Muslim inmates and does not require Plaintiff to abide by another religion's
4    requirements to receive a diet compliant with his religion. Finally, there is no Eighth Amendment
5    violation because Plaintiff does not need to stay in the RMAP diet to observe his religion. He can
6    therefore choose a different diet – or exit the RMAP diet – and supplement his diet with purchases
7    from the canteen and other vendors to meet his nutritional and health requirements. For the same
8    reason, expulsion from the RAMP diet would not cause him irreparable harm because the RAMP
9    diet does not satisfy his religion's dietary requirements. Given that participation in the RAMP diet
10   is not necessary for Plaintiff to fulfill what he represents to be his religious dietary requirements
11   and expulsion from the RAMP diet would not violate Plaintiff's constitutional rights, the balance
12   of equities does not tip in Plaintiff's favor and the TRO/PI would not serve the public interest.
13         Accordingly, the Court exercises its discretion and DENIES Plaintiff's request for a
14   temporary restraining order and preliminary injunction prohibiting Defendants from denying him
15   the ability to supplement the RMAP diet with non-Halal or non-Kosher food items from the prison
16   canteen or vendors. To the extent that Plaintiff is seeking a TRO/PI requiring prison officials to
17   provide him with a GMO-free diet, Plaintiff has not raised that claim in this action. This action
18   challenges Plaintiff's inability to supplement the RMAP diet with non-Halal items. If Plaintiff
19   wishes to require prison officials to provide him with a GMO-free diet so that he may comply with
20   the dietary restrictions of his religion, he should amend the complaint accordingly. Plaintiff is
21   reminded that he must exhaust administrative remedies for any claims that he brings in a civil
22   rights action.

## CONCLUSION

24   For the reasons set forth above, the Court DENIES Plaintiff's request for a temporary
25   restraining order and preliminary injunction from denying him the ability to supplement his GMO-
26   free (RMAP) diet, that is required by his religion, with non-Halal or non-Kosher food items from
27   the prison canteen or vendors. Dkt. No. 17.
28   This order terminates Dkt. No. 17.

**IT IS SO ORDERED.**

Dated: 8/1/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge