UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE LYDELL HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>CLERIC MUHAMMAD, et al.,<br><br>Defendants. | Case No. 21-cv-00283-HSG<br><br>**ORDER GRANTING LEAVE TO FILE SECOND AMENDED COMPLAINT; SCREENING SECOND AMENDED COMPLAINT; ORDERING SERVICE AND RESETTING BRIEFING SCHEDULE**<br><br>Re: Dkt. No. 24 |

Plaintiff, an inmate at San Quentin State Prison ("SQSP"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has requested leave to file a second amended complaint, Dkt. No. 24, and filed a proposed second amended complaint, Dkt. No. 25. The Court GRANTS Plaintiff's request for leave to file a second amended complaint. Dkt. No. 24. Dkt. No. 25 is deemed filed and will be the operative second amended complaint. The second amended complaint is screened below.

## DISCUSSION

**A.     Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). While Rule 8 does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement does not suffice. *Id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.     Second Amended Complaint (Dkt. No. 25)**

The second amended complaint names as defendants SQSP Muslim cleric Muhammad (K. Fasish); SQSP Christian chaplain Jackson; and Chaplain Charles Richey, the Community Resources Manager of the CDCR's Division of Adult Institution's Religious Programs Oversight Unit.

The second amended complaint makes the following allegations.

Plaintiff is a practitioner and member of the Sokai Gakkai International – USA ("SGI"), a Nichiren Buddhist organization. Dkt. No. 25 at 1. Plaintiff sincerely believes that his body is a Buddhist temple which should not be polluted by meat containing genetically engineered ingredients ("GMO"). In order to accommodate this religious belief, in 2007, Plaintiff enrolled in the Religious Meat Alternative ("RMA") diet because it does not use GMO ingredients. The RMAP diet is offered only at the dinner meal. When the standardized menu has only meat entrees available, inmates on the RMAP diet are offered a Halal meat replacement, either a chicken or beef patty or two hot dogs. If there is a vegetarian or fish entrée offered on the standardized menu, no Halal replacement is offered.

SQSP has "constant violations" of the RMAP. There are "mystery meat" substitutions for

the religious meat alternatives that are lower in nutrition. Both the mystery meat meals and the vegetarian meals negatively affect Plaintiff's focus and strength, causing him to be light-headed. This also affects his ability to practice his religion, because his religion requires his body to be strong, heathy, peaceful, and focused so that he can meditate and carry out other religious practices. There have been at least 19 instances where Plaintiff has been served food items that are not part of RMAP.

Plaintiff occasionally consumes ramen soups, purchased from the canteen. Ramen soups are a staple in Nichiren Buddhist culture and are not prohibited by Plaintiff's religious diet or beliefs. These ramen soups are necessary for Plaintiff's health. He consumes these ramen soups to satiate his hunger; or when the RMAP diet fails to provide sufficient nutrition, such as when the religious meat alternative dinner is replaced with vegetarian meals; or when he does not receive his RMAP meal. He also consumed these soups during COVID, when, due to the COVID outbreak, SQSP modified their feeding procedures in a way that resulted in meals being half their usual portions.

On May 16, 2019, defendant Fasish issued Plaintiff a religious diet violation for purchasing ramen soups. Plaintiff appealed this violation, arguing that the consumption of ramen soups was consistent with Nichiren religious practices. Plaintiff's appeal was denied on the grounds that Plaintiff's purchase of ramen soups violated 15 Cal. Code Regs. § 3054.3(a) in that they are non-Halal items. Because "halal" is a term used to describe Islamic dietary requirements, the requirement that Plaintiff consume only Halal items requires to abide by Islamic dietary laws in order to remain in the RMAP diet.

On October 10, 2020, defendant Jackson issued Plaintiff another religious diet violation for buying soups during the pandemic – June, July, and August 2020. Defendant Jackson informed Plaintiff that if he wished to avoid having the violation placed into his prison file, he could voluntarily withdraw from the RMAP diet. Plaintiff responded that prison policy allowed him to eat foods that are not part of the Religious Diet Program when he was not provided with his mandated RMAP meals. Defendant Jackson replied that Plaintiff was technically correct, but the "higher-ups in Sacramento" ordered her to issue the violation. Defendant Jackson would not

identify the higher-ups, but based on Rabbi Schleffar's description of defendant Charles Richey's duties and place of employment, Plaintiff "truly believes" that defendant Richey is "at least one of the people who ordered both Defs. Jackson and Fasish to violate [Plaintiff] for purchasing non-Islamic food items." In addition, defendant Richey implements the quarterly audits, which indicates that defendant Richey is able to provide the injunctive relief requested.

Plaintiff seeks the following relief: a declaration that the acts and omissions described in the second amended complaint violated the federal Constitution, federal law, and the RLUIPA; a declaration that the vegetarian and RMAP diets are separate and non-interchangeable under 15 Cal. Code Regs. § 3054; a preliminary and permanent injunction ordering Defendants to cease requiring Plaintiff to follow Islamic dietary laws in order to participate in the RMAP diet; to cease considering non-meat or poultry items as haram, i.e., to cease using a false interpretation of the Islamic term "halal;" and to cease considering Plaintiff in violation of his religious diet when he substitutes his religious diet with non-Islamic food items when he does not receive his RMAP dinners; and monetary damages.

Liberally construed, the second amended complaint states the following cognizable claims. Defendants' requirement that Plaintiff refrain from consuming ramen soups in order for Plaintiff to receive the RMAP diet violates the Free Exercise Clause, the Eighth Amendment, the Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because the ramen soups are consistent with Plaintiff's religious beliefs, the ramen soups are necessary for Plaintiff to maintain his health, the requirement requires him to adhere to Islamic dietary laws, and the RMAP diet is the only prison diet consistent with Plaintiff's religious beliefs. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (Free Exercise Clause prohibits prison officials from burdening inmate's practice of religion without justification reasonably related to legitimate penological interests); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to prisoner's serious medical needs violates Eighth Amendment's proscription against cruel and unusual punishment); *City of Cleburne v. Cleburne Living Center*,

473 U.S. 432, 439 (1985) (Equal Protection Clause requires that all persons similarly situated should be treated alike); 42 U.S.C. § 2000cc-1(a) (RLUIPA prohibits government from imposing "a substantial burden on the religious exercise of a person residing in [prison], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.").

**CONCLUSION**

For the foregoing reason, the Court orders as follows.

1. The following defendant(s) shall be served: Chaplain Charles Richey, Community Resources Manager of the California Department of Corrections and Rehabilitation's Division of Adult Institution's Religious Programs Oversight Unit.[1]

Service on the listed defendant(s) shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") e-service program for civil rights cases from prisoners in the CDCR's custody. In accordance with the program, the Clerk is directed to serve on the CDCR via email the following documents: the operative complaint (Dkt. No. 25), this order of service, a CDCR Report of E-Service Waiver form and a summons. The Clerk also shall serve a copy of this order on the Plaintiff.

No later than 40 days after service of this order via email on the CDCR, the CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service ("USMS") and which defendant(s) decline to waive service or could not be reached. The CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a

---

[1] Defendants San Quentin State Prison Muslim cleric Muhammad (K. Fasish) and Christian chaplain Jackson have already been served and appeared in this action. Dkt. Nos. 6, 10, 11, 14.

1  USM-205 Form.  The Clerk shall provide to the USMS the completed USM-205 forms and copies
2  of this order, the summons and the operative complaint for service upon each defendant who has
3  not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-
4  Service Waiver.

5       2.     The Court GRANTS Plaintiff leave to file the second amended complaint.  Dkt.
6  No. 24.  Dkt. No. 25 is deemed filed and will be the operative second amended complaint.

7       3.     The second amended complaint states the cognizable free exercise, Eighth
8  Amendment, equal protection, and RLUIPA claims identified above.

9       4.     The Court resets the briefing schedule as follows.

10          a.     No later than 91 days from the date this order is filed, Defendants must file
11  and serve a motion for summary judgment or other dispositive motion.  If Defendants are of the
12  opinion that this case cannot be resolved by summary judgment, Defendants must so inform the
13  Court prior to the date the motion is due.  A motion for summary judgment also must be
14  accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what
15  is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir.
16  2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be
17  served concurrently with motion for summary judgment).[2]

18          b.     Plaintiff's opposition to the summary judgment or other dispositive motion
19  must be filed with the Court and served upon Defendants no later than 28 days from the date the
20  motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment
21  provided later in this order as he prepares his opposition to any motion for summary judgment.

22          c.     Defendants shall file a reply brief no later than 14 days after the date the
23  opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No
24  hearing will be held on the motion.

---

[2] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

1        5.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the
2 Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must
3 do in order to oppose a motion for summary judgment.  Generally, summary judgment must be
4 granted when there is no genuine issue of material fact – that is, if there is no real dispute about
5 any fact that would affect the result of your case, the party who asked for summary judgment is
6 entitled to judgment as a matter of law, which will end your case.  When a party you are suing
7 makes a motion for summary judgment that is properly supported by declarations (or other sworn
8 testimony), you cannot simply rely on what your complaint says.  Instead, you must set out
9 specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,
10 as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and
11 documents and show that there is a genuine issue of material fact for trial.  If you do not submit
12 your own evidence in opposition, summary judgment, if appropriate, may be entered against you.
13 If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v.*
14 *Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).  (The *Rand* notice above does
15 not excuse Defendants' obligation to serve said notice again concurrently with a motion for
16 summary judgment.  *Woods*, 684 F.3d at 939).

         This order terminates Dkt. No. 24.

         **IT IS SO ORDERED.**

Dated: 10/12/2023

                                        HAYWOOD S. GILLIAM, JR.
                                        United States District Judge

7