UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE LYDELL HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>CLERIC MUHAMMAD (K. FASISH), et al.,<br><br>    Defendants. | Case No. 21-cv-00283-HSG<br><br>**ORDER GRANTING NUNC PRO TUNC PLAINTIFF'S REQUEST FOR AN EXTENSION OF TIME; DENYING PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 39, 41 |

Plaintiff, an inmate at Corcoran State Prison ("CSP-Corcoran"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Now pending before the Court is Plaintiff's request for a temporary restraining order ("TRO") and preliminary injunction ("PI") that would require Defendants to place him back on the Religious Meat Alternate Program diet and prohibit Defendants from retaliating against him for filing this action. Dkt. No. 39. Defendants have filed an opposition, Dkt. No. 40; and Plaintiff has filed a reply, Dkt. No. 42. Also pending before the Court is Plaintiff's request for an extension of time to file a reply. Dkt. No. 41. For the reasons set forth below, the Court GRANTS *nunc pro tunc* Plaintiff's request for an extension of time to file his reply, Dkt. No. 41; deems Plaintiff's reply timely filed; and DENIES Plaintiff's request for a TRO/PI. Dkt. No. 39.

**BACKGROUND**

Plaintiff commenced this action on or around January 12, 2021 by filing a complaint. Dkt. No. 1. On May 25, 2021, the Court found that the complaint stated cognizable claims against San Quentin State Prison ("SQSP") chaplains K. Fasish (also referred to as Cleric Muhammad) and Jackson (Christian chaplain) for violations of the First Amendment's free exercise clause and Establishment clause, the Eighth Amendment's prohibition against deliberate indifference to an

inmate's serious medical needs, the Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Specifically, the complaint alleged the following. Plaintiff is a practicing Buddhist. The California Department of Corrections and Rehabilitations ("CDCR") does not offer a diet for Buddhists. The CDCR offers three religious diets: vegetarian, kosher, and Islamic diet. The Islamic diet offers halal-certified meats and is referred to as the Religious Meat Alternative Program ("RMAP"). Sometime between 2005-2007, then-SQSP Jewish chaplain Hyman allowed Plaintiff to enroll in the RMAP to accommodate Plaintiff's religious dietary requirements. The understanding was that Plaintiff did not have to abide by Islamic dietary requirements to remain enrolled in RMAP. RMAP often serves vegetarian meals instead of the approved meat alternatives. These vegetarian meals are nutritionally insufficient, causing Plaintiff health issues, including light-headedness and lethargy. To compensate for RMAP's insufficient nutrition and calories, Plaintiff consumes ramen soups which he purchases from the commissary. Consumption of ramen soups is allowable by Buddhist dietary laws. Defendants have informed Plaintiff that his enrollment in RMAP is at risk because these ramen soups violate Islamic dietary laws. The complaint alleges that defendants Fasish and Jackson have violated the First Amendment, Eight Amendment, the Equal Protection Clause, and RLUIPA by (1) failing to provide Plaintiff with a diet that is consistent with his religious beliefs and adequate to meet his nutritional and health needs because the RMAP diet is insufficient nutritionally and calorically, and (2) by requiring Plaintiff to adhere to Islamic dietary laws, i.e. refrain from consuming ramen soups, in order to remain enrolled in the RMAP, which is the diet which best accommodates his religious dietary requirements. Dkt. Nos. 1, 6.

Plaintiff filed an amended complaint. Dkt. No. 8. On April 7, 2022, the Court screened the amended complaint and found that it stated the following cognizable claims: (1) defendants Jackson and Muhammad (Fasish) violated the Free Exercise Clause when they conditioned Plaintiff's ability to receive a GMO-free diet, which he claims is a tenet of his religion, on giving up the consumption of ramen soups which he eats to maintain his health given the limitations of the GMO-free diet available to him through the RMAP, in violation of the First Amendment's free exercise clause; (2) defendants Jackson and Muhammad (Fasish) have failed to provide Plaintiff

2

with a nutritionally adequate diet consistent with his religious beliefs, specifically a GMO-free diet that provides sufficient nutrition and calories in violation of the First Amendment's free exercise clause; (3) defendants Muhammad and Jackson have refused to allow Plaintiff to supplement the RMAP with foods adequate to meet his nutritional and health needs, in violation of the Eighth Amendment's prohibition on deliberate indifference to Plaintiff's serious medical needs; (4) defendants Muhammad (Fasish) and Jackson allow Muslim and Jewish inmates to receive meals that comply with their religious beliefs without placing additional requirements upon them, but have conditioned Plaintiff's ability to receive a GMO-free diet, as required by his religion, by requiring him to adhere to Islamic dietary rules to stay in the RMAP, in violation of the Equal Protection Clause and RLUIPA. Dkt. Nos. 8, 13.

On June 10, 2022, Plaintiff filed a motion for a temporary restraining order that would prohibit Defendants from denying him the ability to supplement the RMAP diet with non-Halal or non-Kosher food items from the prison canteen or vendors, including the aforementioned ramen soups. Dkt. No. 17. On August 1, 2022, the Court denied the request for a TRO/PI for the following reasons:

> The Court DENIES Plaintiff's TRO/PI request. Plaintiff is unlikely to succeed on the merits of his claim because the RMAP diet is not providing Plaintiff with the GMO-free diet required by his religion. Expulsion from the RMAP diet would therefore not affect Plaintiff's ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA. Similarly, because the RMAP diet does not fulfill the dictates of Plaintiff's religion, requiring Plaintiff to abide by the restrictions in the RMAP diet does not treat Plaintiff differently from Jewish and Muslim inmates and does not require Plaintiff to abide by another religion's requirements to receive a diet compliant with his religion. Finally, there is no Eighth Amendment violation because Plaintiff does not need to stay in the RMAP diet to observe his religion. He can therefore choose a different diet – or exit the RMAP diet – and supplement his diet with purchases from the canteen and other vendors to meet his nutritional and health requirements. For the same reason, expulsion from the RMAP diet would not cause him irreparable harm because the RMAP diet does not satisfy his religion's dietary requirements. Given that participation in the RMAP diet is not necessary for Plaintiff to fulfill his religious dietary requirements and expulsion from the RMAP diet would not violate Plaintiff's constitutional rights, the balance of equities does not tip in Plaintiff's favor and the TRO/PI would not serve the public interest.
> 
> Accordingly, the Court exercises its discretion and DENIES Plaintiff's request for a temporary restraining order and preliminary injunction prohibiting Defendants from denying him the ability to supplement the RMAP diet with non-Halal or non-Kosher food items from the prison canteen or vendors. To the extent that Plaintiff is seeking a TRO/PI requiring prison officials to provide him with a GMO-free diet, Plaintiff has not raised that claim in this action. This action challenges Plaintiff's inability to supplement the RMAP diet with non-Halal items. If Plaintiff wishes to require prison officials to provide him

with a GMO-free diet so that he may comply with the dietary restrictions of his religion, he should amend the complaint accordingly. Plaintiff is reminded that he must exhaust administrative remedies for any claims that he brings in a civil rights action.

Dkt. No. 22 at 5-6.

On August 29, 2022, Plaintiff filed a second amended complaint. Dkt. No. 25. The Court screened the second amended complaint and found that it stated the following cognizable claims. The requirement set forth by defendants San Quentin State Prison chaplains K. Fasish (also referred to as Cleric Muhammad) and Jackson (Christian chaplain), and Chaplain Charles Richey, the Community Resources Manager of the CDCR's Division of Adult Institution's Religious Programs Oversight Unit – that Plaintiff refrain from consuming ramen soups in order for Plaintiff to receive the RMAP diet – violates the Free Exercise Clause, the Eighth Amendment, the Equal Protection Clause, and the RLUIPA because the ramen soups are consistent with Plaintiff's religious beliefs, the ramen soups are necessary for Plaintiff to maintain his health, the requirement requires Plaintiff to adhere to Islamic dietary laws, and the RMAP diet is the only prison diet consistent with Plaintiff's religious beliefs. *See generally* Dkt. Nos. 25, 29.

## DISCUSSION

On January 16, 2024, Plaintiff filed a renewed request for a temporary restraining order, requesting that the Court order Defendants to re-enroll him in the RMAP and to cease retaliating against him for bringing this action. Dkt. No. 39. Defendants have filed an opposition, Dkt. No. 40, and Plaintiff has filed a reply, Dkt. No. 42.

### I.      Legal Standard

The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in any action involving prison conditions. *See* 18 U.S.C. § 3626(a). Section 3626(a)(2) permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but requires that such an order "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C. § 3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.* "A plaintiff

4

seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (noting that such remedies are extraordinary, and not granted as of right). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)). Even where the balance tips sharply in the plaintiff's favor, however, the plaintiff must still make the threshold showing of likely success on the merits or a serious legal question. *See Leyva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[E]ven certainty of irreparable harm has never *entitled* one to a stay.") (emphasis in original). In addition, the issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## II. Factual Background

Plaintiff practices Nichiren Buddhism which requires him to eat cleanly. Plaintiff describes "eating cleanly" as eating organic foods and avoiding foods that are highly processed, artificial, synthetic, or having chemical-sounding names. Dkt. No. 39 at 14-17. In 2010, Plaintiff described his religious dietary needs to Rabbi Hyman as eating wisely and cleanly to avoid contaminating his body and the environment. Dkt. No. 39 at 16. Based on this description, Rabbi Hyman told Plaintiff that the religious diet that best complemented his religious dietary needs was the RMAP. Dkt. No. 39 at 16. In 2011, Plaintiff enrolled in the RMAP and, since that date, the RMAP has constituted a "significant part of [his religious] practice . . . " Dkt. No. 39 at 4, 16;

5

Dkt. No. 42 at 4. Whether the meat served to Plaintiff complies with Islamic/halal standards "is irrelevant to [Plaintiff's] Buddhist practice." Dkt. No. 39 at 18.

Plaintiff enrolled in RMAP with the understanding that his participation in RMAP requires him to abide by the dietary restrictions of his religion but does not require him to abide by Islamic dietary restrictions, i.e. only purchasing and consuming food stuffs that are halal-certified. Dkt. No. 39 at 4. Current CDCR regulations provide that for an inmate to remain enrolled in the RMAP, the inmate may not purchase or consume non-halal certified meats but the inmate is not otherwise required to abide by any other Islamic tenets. 15 Cal. Code Regs. § 3054.9; Dkt. No. 20-1 at 6. Plaintiff argues that the CDCR regulation prohibiting consumption of non-halal-certified meats to remain enrolled in RMAP is inapplicable to him because when he originally enrolled in RMAP in 2011, he was informed, and agreed, that he only needed to abide by his religious dietary requirements to stay enrolled in RMAP. Dkt. No. 39 at 17.

In 2019, prison officials began issuing notices to Plaintiff informing him that he was not in compliance with the religious diet agreement because he had purchased non-halal foodstuffs from the canteen. Specifically, Plaintiff purchases ramen soups to supplement his diet when the RMAP is nutritionally or calorically insufficient or when he does not receive his RMAP meal. Dkt. No. 39 at 4. Plaintiff has previously purchased non-halal items from the canteen without receiving any violations. Dkt. No. 39 at 4; Dkt. No. 42 at 4.

On July 5, 2023, Plaintiff was transferred to CSP-Corcoran. On July 6, 2023, the CSP-Corcoran Religious Review Committee ("RRC") issued Plaintiff a notice of non-compliance with the RMAP. Dkt. No. 39 at 4. Defendant Richey does not sit on the CSP-Corcoran RRC and was not involved in issuing this violation. Dkt. No. 40 at 5; Dkt. No. 40-1 at 2. Plaintiff alleges that this notice of non-compliance is "false" because he arrived at CSP-Corcoran the day prior to the notice being issued and, during that one day, he did not have an opportunity to go to the canteen to purchase items, and he had not yet received his property, including any food items, from his prior prison. Dkt. No. 42 at 3.

On November 15, 2023, Plaintiff was interviewed by CSP-Corcoran Chaplain C. Ugwu, regarding purchases and/or consumption of food items that were not part of the RMAP.

Specifically, between August 8, 2023 and November 3, 2023, Plaintiff made seven purchases of food items that contained non-halal-certified meats: 24 packages of low sodium beef ramen; 10 packages of low sodium chicken ramen; 2 packages of beef ramen; 5 packages of Doña Adela chilorio shredded pork; 3 packages of Back Country hot chili beans; 45 packages of picante beef ramen; and 5 packages of Cactus Annie spicy pork rinds. Dkt. No. 40-1 at 2, 5-6.[1] On December 8, 2023, Plaintiff was issued a second notice of non-compliance with the RMAP for having purchased the above listed non-compliant food items between August 8, 2023 and November 3, 2023. Because Plaintiff had received two notices of non-compliance within a six-month period, Plaintiff was removed from the RMAP. The decision to remove Plaintiff from the RMAP was made by CSP-Corcoran staff members, including Chaplain C. Ugwu, the CSP-Corcoran RRC, and Community Resources Manager ("CRM") M. Robicheaux. Dkt. No. 40-1 at 2, 5-10. Defendant Richey did not review Plaintiff's violations, issue any of the notices of non-compliance, or make the decision to remove Plaintiff from the RMAP.[2] Dkt. No. 40-1 at 2.

The ingredient labels of the ramen packets purchased by Plaintiff from the canteen indicate that the ramen is made of ingredients that use GMO products, including vegetable oil, soy sauce, maltodextrin, hydrolyzed corn, dehydrated vegetables, and spices. Dkt. No. 40-1 at 3.

The CDCR offers four alternative diets: a Kosher Diet Program, a Vegetarian Program, a

---

[1] Plaintiff argues that the allegation that he was removed from RMAP due to non-RMAP-compliant purchases between August 2023 to November 2023 is both hearsay and false. Dkt. No. 42 at 4. However, the Court can consider hearsay when ruling on a TRO/PI motion. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (rules of evidence do not apply strictly to preliminary injunction proceedings); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (district courts have discretion to consider hearsay when deciding whether to issue preliminary injunction). And this allegation also is not clearly false, as Defendants have provided evidence of both the non-compliant purchases (a list of Plaintiff's commissary purchases) and the notification of removal from RMAP referencing these purchases. Dkt. No. 40-1 at 2, 5-10.

[2] Plaintiff argues that the allegation that defendant Richey was not involved in issuing the notices of violation or his removal from RMAP is both hearsay and false. Dkt. No. 42 at 4. Again, the Court may consider hearsay when ruling on a TRO/PI motion. Moreover, Defendants have stated that CSP-Corcoran CRM M. Robicheaux is willing to submit a declaration in support of this allegation, which would resolve the hearsay issue. *Cf. Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (district court properly considered diary which defendants moved to strike as inadmissible hearsay because "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We focus instead on the admissibility of its contents."). This allegation also is not clearly false.

1  Plant Based Diet, and the RMAP. 15 Cal. Code Regs. § 3054(f); Dkt. No. 20-1 at 5-6. The
2  RMAP offers inmates halal-certified meat to be substituted at the dinner meal when meat is
3  served. 15 Cal. Code Regs. § 3054.5(c). Halal-certified meat is meat from an animal that was
4  cared for and slaughtered according to Islamic dietary laws. The RMAP does not offer GMO-free
5  foods or meat. Dkt. No. 20-1 at 5-6. There is nothing in the record that indicates that RMAP
6  serves inmates organic foods, or omits serving foods that are highly processed, artificial, synthetic,
7  or have chemical-sounding names.

8        Providing specialized diets to inmates based on their religious practices is costly. Dkt. No.
9  20-1 at 4. Eliminating inmates from their religious diet programs if an inmate is violating the
10 terms of the specific religious dietary program reduces unnecessary costs expended to provide
11 specialized meals to inmates who are simply using the program to control the food they receive
12 while serving their sentences. Dkt. No. 20-1 at 4. In or around 2018, all CDCR institutions
13 updated inmates' hard copy central files into an electronic computerized system, as part of a
14 modernization of the CDCR recordkeeping system. Dkt. No. 20-1 at 3. After the CDCR moved
15 to electronic computerized files, the Religious Program Oversight Unit in Sacramento, California
16 ordered all institutions to implement quarterly evaluations of all inmates in religious diet
17 programs, including, but not limited to, the RMAP, to determine whether inmates who have
18 previously qualified for a religious diet are violating the terms of the religious diet program
19 agreement by purchasing items from the canteen that are not permitted under their religious
20 beliefs. Prior to the implementation of the electronic computerized system, quarterly audits of
21 inmates enrolled in religious diet programs were not feasible. Dkt. No. 20-1 at 4.

22 **III.  Analysis**

23       Plaintiff requests that the Court enter a temporary restraining order and preliminary
24 injunction requiring Defendants to place him back on the RMAP diet and allow him to stay in the
25 RMAP without requiring him to refrain from purchasing or consuming food items containing non-
26 halal-certified meats, and ordering Defendants to refrain from retaliating against him. *See*
27 *generally* Dkt. No. 39. Plaintiff argues that he is likely to succeed on the merits of his claim that
28 conditioning his enrollment in the RMAP on consuming only halal-certified meats for the

8

following reasons. First, Plaintiff has made the RMAP a significant part of his religious exercise since 2010 when he described his religious dietary needs to Rabbi Hyman, and Rabbi Hyman offered him the RMAP as an accommodation to his religious beliefs. Second, the requirement that Plaintiff abide by Islamic dietary laws, specifically only eating meats that are halal-certified, is a substantial burden on his religious exercise, and is in violation of the binding agreement that he entered into in 2011 when he enrolled in the RMAP. Third, there is no compelling government interest in conditioning his ability to benefit from a state religious diet upon his adherence to another religion's dietary laws. Fourth, the RMAP is the least-restrictive means of providing him a diet that complies with his dietary needs, as the alternative would be a strictly GMO-free/clean diet. Fifth, he has suffered irreparable harm because the loss of his First Amendment right to practice his religion, even for a minimal period, constitutes irreparable injury. Sixth, the balance of equities favors Plaintiff because neither Defendants nor the CDCR will be burdened by returning Plaintiff to the diet he has had for the past 12 years, while Plaintiff's religious exercise is burdened by his inability to eat the meals provided by RMAP. Dkt. No. 39 at 1-10; Dkt. No. 42 at 1-8.

Defendants argue that the Court should deny the TRO/PI request because Plaintiff's circumstances are, in relevant part, unchanged from when the Court denied his first TRO/PI request, and therefore the Court's reasoning supporting the denial of the TRO/PI request is still valid. Defendants argue that the only changes in Plaintiff's circumstances are that he has now been removed from RMAP and that he believes, without providing any evidence, that defendant Richey is the cause of his removal, and that neither of these changes affect the Court's conclusion that Plaintiff does not need to stay in the RMAP to observe his religion. *See generally* Dkt. No. 40.

Defendants also make the following additional arguments in opposition to the TRO/PI request. First, Defendants argue that the Court lacks jurisdiction to grant the relief because none of the named defendants issued the additional violations referenced in Plaintiff's renewed TRO/PI request or removed Plaintiff from the RMAP, and the Court does not have jurisdiction over the individuals who issued the violations. Second, Plaintiff has not made a clear showing of

immediate and irreparable harm because the RMAP is not providing Plaintiff with the GMO-free diet that is required by his religion. Third, Plaintiff has not established a likelihood of success on the merits because RMAP is not a GMO-free diet; prison regulations do not require the CDCR to provide Plaintiff a GMO-free diet; and expulsion from the diet does not affect Plaintiff's ability to exercise his religion because the RMAP diet is not compliant with Plaintiff's religion. Fourth, Plaintiff has not met his burden of showing that the injunction serves a public interest because he focuses on the cost of providing food to one person and ignores the cost of providing specialized diets to inmates based on their individual religious practices and the related operational, security, and cost interest in maintaining a religious dietary program where participants do not violate the terms of the religious dietary agreement. Fifth, the balance of equities do not favor Plaintiff because the expulsion from the RMAP diet does not burden his religious practice or violate his constitutional or federal statutory rights, and the expulsion was in accordance with state and prison regulations. *See generally* Dkt. No. 40.

The Court DENIES Plaintiff's TRO/PI request. Plaintiff is unlikely to succeed on the merits of his claim because the RMAP diet is not providing Plaintiff with the diet required by his religion. Plaintiff states that he has made the RMAP a substantial portion of his religious practice. However, Plaintiff has not indicated how the RMAP is consistent with his religious beliefs. Plaintiff states that his religion requires him to eat "wisely" or "cleanly," which he describes as eating organic foods and avoiding foods that are highly processed, artificial, synthetic, have genetically modified organisms, or have chemical-sounding names. But the primary difference between the RMAP and other prison diets is that the meat served is halal-certified. Plaintiff has not provided any evidence that the RMAP provides him with organic foods, or omits foods that are highly processed, artificial, synthetic, have genetically modified organisms, or have chemical-sounding names. And Plaintiff has stated that whether meat is certified halal is irrelevant to his religious dietary restrictions. Expulsion from the RMAP diet would therefore not affect Plaintiff's ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA. Similarly, because the RMAP diet does not fulfill the dictates of Plaintiff's religion, requiring Plaintiff to abide by the restrictions in the RMAP diet does not treat Plaintiff differently

10

from Jewish and Muslim inmates and does not require Plaintiff to abide by another religion's requirements to receive a diet compliant with his religion. For the same reason, expulsion from the RMAP diet has not caused Plaintiff irreparable harm because the RMAP diet does not satisfy his religion's dietary requirements. Given that participation in the RMAP diet is not necessary for Plaintiff to fulfill his religious dietary requirements and expulsion from the RMAP diet does not violate Plaintiff's constitutional rights, the balance of equities does not weigh in Plaintiff's favor and the TRO/PI would not serve the public interest.

Accordingly, the Court exercises its discretion and DENIES Plaintiff's renewed request for a temporary restraining order and preliminary injunction requiring Defendants to re-enroll him in RMAP.

Plaintiff has also requested a TRO/PI forbidding Defendants from retaliating against him for filing this action. Plaintiff alleges that the removal from RMAP was retaliatory. However, Plaintiff has not raised a retaliation claim in this action. This action challenges Plaintiff's inability to supplement the RMAP diet with non-Halal items. A plaintiff is not entitled to an injunction based on claims not pled in the complaint. *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).[3]

## CONCLUSION

For the reasons set forth above, the Court GRANTS *nunc pro tunc* Plaintiff's request for an extension of time to file his reply, Dkt. No. 41; deems Plaintiff's reply timely filed; and DENIES Plaintiff's renewed request for a temporary restraining order and preliminary injunction requiring Defendants to re-enroll him in the RMAP and forbidding Defendants from retaliating against him for filing this action, Dkt. No. 39.

//

//

//

---

[3] If Plaintiff wishes to challenge alleged retaliatory actions by prison officials, he should either amend the complaint to add such claims or file a separate action. Plaintiff is reminded that he must exhaust administrative remedies for any claims that he brings in a civil rights action prior to bringing those claims.

11

This order terminates Dkt. Nos. 39, 41.

**IT IS SO ORDERED.**

Dated: 4/23/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

12