UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAURICE LYDELL HARRIS,

Plaintiff,

v.

CLERIC MUHAMMAD (K. FASISH), et al.,

Defendants.

Case No. 21-cv-00283-HSG

**ORDER VACATING JUDGMENT AND REOPENING ACTION; REQUIRING SUPPLEMENTAL BRIEFING; SETTING BRIEFING SCHEDULE**

Plaintiff, an inmate currently housed at Corcoran State Prison ("CSP"), filed the instant *pro se* civil rights action under 42 U.S.C. § 1983. For the reasons set forth below, the Court VACATES the portion of the April 23, 2024 Order denying Plaintiff's request for a temporary restraining order and preliminary injunction, Dkt. No. 47; REOPENS this action; ORDERS the parties to file supplemental briefing; and SETS a briefing schedule.

**DISCUSSION**

**I.      Background**

Plaintiff has filed a civil rights action alleging that prison officials have unconstitutionally denied him a diet that complies with his religious faith and provides adequate nutrition. According to Plaintiff, the California Department of Corrections and Rehabilitation ("CDCR")'s meal plan for Muslims, the Religious Meal Alternative Program ("RMAP"), best accommodates the dietary requirements of his Nichiren Buddhist faith. Plaintiff occasionally consumes ramen soups to supplement his diet when the RMAP meals provide inadequate nutrition and calories. These ramen soups comply with Nichiren Buddhist dietary requirements but are not compliant with Islamic dietary laws. Prison officials have conditioned Plaintiff's enrollment in RMAP on maintaining a diet consistent with Islamic dietary laws. However, prison officials provide Muslim and Jewish inmates with diets consistent with their religious faith without imposing additional

requirements on them. Plaintiff alleges that the requirement that he abide by Islamic dietary laws to remain in the RMAP violates his First Amendment right to freely exercise his religion, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Equal Protection Clause, and the Eighth Amendment prohibition on deliberate indifference to his serious medical needs. *See generally* Dkt. No. 25, 29.

When Plaintiff commenced this action on or around July 12, 2021, he was housed at San Quentin Rehabilitation Center ("SQRC") and enrolled in RMAP. Plaintiff therefore named as defendants the SQRC individuals who had decision-making authority regarding enrollment in religious diets: Chaplain K. Fasish (also referred to as Cleric Muhammad); Chaplain Jackson (the Christian chaplain); and the Community Resources Manager ("CRM") chaplain Charles Richey.

On July 5, 2023, Plaintiff was transferred to Corcoran State Prison ("CSP"), and he remains housed there as of the date of this order. Currently, CSP staff – specifically Chaplain C. Ugwu, the CSP Religious Review Committee, and the CSP CRM M. Robicheaux – have decision-making authority regarding Plaintiff's enrollment in a religious diet. On July 6, 2023 and on December 8, 2023, the CSP Religious Review Committee ("RRC") issued Plaintiff notices of non-compliance with the RMAP due to having purchased food items that contained non-halal certified meats. Pursuant to prison policy, CSP staff members, including Chaplain Ugwu, the CSP Religious Review Committee, and CRM Robicheaux, removed Plaintiff from the RMAP for receiving two notices of non-compliance within a six-month period. Dkt. No. 40-1 at 2, 5.

## II. First Request for Temporary Restraining Order / Preliminary Injunction

On June 10, 2022, while still housed at SQRC, Plaintiff filed a motion requesting "a Temporary Restraining Order and a Preliminary Injunction from the further denial of his ability to supplement his GMO-free (RMAP) diet, which his religion requires, with non Halal or non-Kosher food items from the prison canteen or vendors, while seeking redress in this Court." Dkt. No. 17. The Court denied the request for a TRO/PI for the following reasons:

> The Court DENIES Plaintiff's TRO/PI request. Plaintiff is unlikely to succeed on the merits of his claim because the RMAP diet is not providing Plaintiff with the GMO-free diet required by his religion. Expulsion from the RMAP diet would therefore not affect Plaintiff's ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA. Similarly, because the RMAP diet does not fulfill the

2

dictates of Plaintiff's religion, requiring Plaintiff to abide by the restrictions in the RMAP diet does not treat Plaintiff differently from Jewish and Muslim inmates and does not require Plaintiff to abide by another religion's requirements to receive a diet compliant with his religion. Finally, there is no Eighth Amendment violation because Plaintiff does not need to stay in the RMAP diet to observe his religion. He can therefore choose a different diet – or exit the RMAP diet – and supplement his diet with purchases from the canteen and other vendors to meet his nutritional and health requirements. For the same reason, expulsion from the RMAP diet would not cause him irreparable harm because the RMAP diet does not satisfy his religion's dietary requirements. Given that participation in the RMAP diet is not necessary for Plaintiff to fulfill his religious dietary requirements and expulsion from the RMAP diet would not violate Plaintiff's constitutional rights, the balance of equities does not tip in Plaintiff's favor and the TRO/PI would not serve the public interest.

Accordingly, the Court exercises its discretion and DENIES Plaintiff's request for a temporary restraining order and preliminary injunction prohibiting Defendants from denying him the ability to supplement the RMAP diet with non-Halal or non-Kosher food items from the prison canteen or vendors. To the extent that Plaintiff is seeking a TRO/PI requiring prison officials to provide him with a GMO-free diet, Plaintiff has not raised that claim in this action. This action challenges Plaintiff's inability to supplement the RMAP diet with non-Halal items. If Plaintiff wishes to require prison officials to provide him with a GMO-free diet so that he may comply with the dietary restrictions of his religion, he should amend the complaint accordingly. Plaintiff is reminded that he must exhaust administrative remedies for any claims that he brings in a civil rights action.

Dkt. No. 22 at 5-6.

### III.    Second Request for Temporary Restraining Order / Preliminary Injunction

On January 16, 2024, after being removed from RMAP by CSP Chaplain Ugwu, CSP CRM Robicheaux, and the CSP Religious Review Committee, Plaintiff filed a renewed request for a temporary restraining order or preliminary injunction requiring Defendants to re-enroll him in RMAP and to allow him to stay in RMAP without requiring him to refrain from purchasing items containing non-halal certified meats. Dkt. No. 39. In the motion, Plaintiff stated that "[a]s a Nichiren Buddhist, . . . his (Buddha) body is a temple that should not be polluted with genetically modified (GMO) or other non-'clean' meats." Dkt. No. 39 at 3. Plaintiff stated that his understanding of Nichiren Buddhism is that it requires him to follow a "clean eating" diet. Plaintiff described "clean eating" as eating organic or natural foods, and avoiding foods that are highly processed, artificial, synthetic, or have chemical sounding names. Dkt. No. 39 at 17. Plaintiff specified that whether meat is halal is irrelevant to his religious practice: "Whether the 'methods of slaughtering' food fits the Islamic – halal – standard is irrelevant to my Buddhist practice." Dkt. No. 39 at 18. The RMAP diet differs from other prison diets in only one respect: for dinner meals that include meat, the meat is substituted with halal-certified meat. 15 Cal. Code

3

United States District Court
Northern District of California

Regs. § 3054.4(c); Dkt. No. 20-1 at 5-6.

Relying on Plaintiff's interpretation of his religious faith as requiring GMO-free food and "clean" meats, but not requiring halal meats, the Court denied the request for a TRO/PI:

> The Court DENIES Plaintiff's TRO/PI request. Plaintiff is unlikely to succeed on the merits of his claim because the RMAP diet is not providing Plaintiff with the diet required by his religion. Plaintiff states that he has made the RMAP a substantial portion of his religious practice. However, Plaintiff has not indicated how the RMAP is consistent with his religious beliefs. Plaintiff states that his religion requires him to eat "wisely" or "cleanly," which he describes as eating organic foods and avoiding foods that are highly processed, artificial, synthetic, have genetically modified organisms, or have chemical-sounding names. But the primary difference between the RMAP and other prison diets is that the meat served is halal-certified. Plaintiff has not provided any evidence that the RMAP provides him with organic foods, or omits foods that are highly processed, artificial, synthetic, have genetically modified organisms, or have chemical sounding names. And Plaintiff has stated that whether meat is certified halal is irrelevant to his religious dietary restrictions. Expulsion from the RMAP diet would therefore not affect Plaintiff's ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA. Similarly, because the RMAP diet does not fulfill the dictates of Plaintiff's religion, requiring Plaintiff to abide by the restrictions in the RMAP diet does not treat Plaintiff differently from Jewish and Muslim inmates and does not require Plaintiff to abide by another religion's requirements to receive a diet compliant with his religion. For the same reason, expulsion from the RMAP diet has not caused Plaintiff irreparable harm because the RMAP diet does not satisfy his religion's dietary requirements. Given that participation in the RMAP diet is not necessary for Plaintiff to fulfill his religious dietary requirements and expulsion from the RMAP diet does not violate Plaintiff's constitutional rights, the balance of equities does not weigh in Plaintiff's favor and the TRO/PI would not serve the public interest.

Dkt. No. 47 at 10-11.

## IV.    Ninth Circuit Opinion

Plaintiff appealed the Court's denial and on February 4, 2026, the Ninth Circuit found that this Court erred in concluding that Plaintiff had no likelihood of success under RLUIPA by questioning whether a halal diet is central to Plaintiff's Nichiren Buddhist beliefs:

> Harris sufficiently shows that the prison imposed a substantial burden on his religious exercise as he understands and interprets his faith. His Second Amended Complaint details how his removal from RMAP leaves him to choose "between his religious diet or receiving a prison violation, and possible loss of his religious diet accommodation of fifteen years." By conditioning his ability to receive the diet which most aligns with his beliefs on whether he keeps Islamic dietary laws, Harris has shown a substantial burden on his religious exercise. *See Apache Stronghold v. United States*, 101 F.4th 1036, 1091 (9th Cir. 2024) (en banc) (Nelson, J., concurring) ("A government act imposes a substantial burden on religious exercise if it (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief.") (cleaned up).

4

Holding otherwise imposes a judicial assessment of what diet is required by Harris's Nichiren Buddhist faith, which is the incorrect mode of analysis. The district court concluded that Harris "is unlikely to succeed on the merits of his claim because the RMAP diet is not providing Plaintiff with the diet required by his religion." The district court reasoned that "whether meat is certified halal is irrelevant to his religious dietary restrictions." Thus, the district court concluded that "[e]xpulsion from the RMAP diet would . . . not affect Plaintiff's ability to observe his religion, as guaranteed by the First Amendment's free exercise clause or by RLUIPA."

But "[i]t is not within the judicial ken to question the validity of particular litigants' interpretations of those creeds." *Shakur*, 514 F.3d at 884 (citation omitted). Judges ought not be Pharisees, decreeing from on high what practices are relevant to a prisoner's understanding of his own faith. *See* Matthew 23:23. It is for Harris to determine whether being on RMAP satisfies Harris's Nichiren Buddhist beliefs. And if external forces cause Harris to fall short of the exact dictates of his religion, it is for him and his conscience, not us as courts, to decide what compromises are appropriate. Thus, it is sufficient that Harris asserts that he sincerely believes that the RMAP program "is closest to his spiritual needs." In holding that an Islamic diet is not required by Harris's Buddhist faith, the district court erred by discounting Harris's own understanding of his faith—that he should eat meat as close "to its natural state as possible"—and instead reduced his faith to requiring a non-GMO diet. [FN 4]

> FN 4: Harris refers to his diet as a non-GMO diet in his complaint. And when he claims his religion instructs him to eat meat as close "to its natural state as possible," he references a non-GMO diet. But as explained, courts should not decide what Harris's religion requires, and Harris asserts that he enrolled in RMAP on the advice of a prison chaplain.

. . .

Harris believes that Islamic slaughter and animal husbandry makes that meat religiously permissible under the dictates of his religious conscience. Harris's departures from the Islamic diet—or even a Buddhist diet— do not demonstrate that his beliefs do not require him to adhere to that diet if possible. "[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?" *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012). Each man's faith is his own, and judges must avoid questioning whether a prisoner has strictly abided by the letter of his own sincere belief. The district court erred by considering these backslides as part of a centrality inquiry (i.e., concluding that expulsion from RMAP would not affect Harris's ability to practice his own religion). Thus, we vacate and remand for the district court to reassess Harris's prima facie substantial burden argument.

Although courts may not determine what actions are dictated by a plaintiff's personal religious beliefs, a court may determine whether those beliefs are sincerely held. *See Shakur*, 514 F.3d at 885 (adopting sincerity test); *Burwell v. Hobby Lobby*, 573 U.S. 682, 717–19 (2014). Sincerity is a low bar, and all that it requires is "to determine whether the line drawn reflects an honest conviction." *Burwell*, 573 U.S. at 725 (cleaned up); see also Ackerman v. Washington, 16 F.4th 170, 180 (6th Cir. 2021). In other words, sincerity is a permissible inquiry for courts to make; centrality is not. This rule makes sense. RLUIPA does not entitle insincere believers in the "Church of Surf 'n' Turf" to luxury lobster and steak dinners. But it also protects the rights of sincere believers, who may not fully adhere to their stated beliefs. Neither the district court nor the prison inquired into the sincerity of Harris's beliefs, only their centrality to his religion. The district court should consider that issue in the first instance. If, after that inquiry, the district court concludes that Harris's religion was substantially burdened, then the government must show that its

United States District Court
Northern District of California

regulation is the least restrictive means to achieve its compelling interest. The government has not yet established whether forcing Harris off RMAP satisfies this standard. *See Warsoldier*, 418 F.3d at 998–99 (prison officials have the burden to "establish that the . . . policy is the least restrictive alternative"). If the government cannot establish that its regulation is the least restrictive alternative, then Harris would have a likelihood of success on the merits of his RLUIPA claim.

*Harris v. Muhammad, et al.*, No. 24-3307, slip op. at 12-13 (9th Cir. Feb. 4, 2026).[1]

The Ninth Circuit's conclusion is based on its finding that Plaintiff "believes that Islamic slaughter and animal husbandry makes that meat religiously permissible under the dictates of his religious conscience," but Plaintiff contended in his motion that whether meat is halal is irrelevant to his religious practice. However, regardless of the role of halal meat in Plaintiff's religious practice, it is clear that the Ninth Circuit has found that Plaintiff's belief that enrollment in the RMAP is necessary to practice his faith is sufficient to show that dis-enrollment from RMAP would be a substantial burden on his religious exercise.

Therefore, as directed by the Ninth Circuit, the Court VACATES the portion of the April 23, 2024 Order denying Plaintiff's request for a temporary restraining order and preliminary injunction, Dkt. No. 47, REOPENS this action, and will reassess Plaintiff's prima facie substantial burden argument. The Court ORDERS the parties to file supplemental briefing addressing (1) whether Plaintiff has articulated a sincere religious belief; (2) if so, whether removal from RMAP is the least restrictive means for the CDCR to achieve a compelling interest; and (3) whether Plaintiff still has standing to bring the claims for injunctive relief against the current defendants, given that he has been transferred to Corcoran State Prison, and whether Plaintiff will seek to amend the operative complaint to name the proper defendant. In addressing the sincerity of

---

[1] Plaintiff reports that, in response to his request for a GMO-free diet in order to comply with his religious dietary restrictions, prison chaplain Hyman offered him the RMAP diet. Dkt. No. 17 at 9-10. However, the record is silent as to why prison chaplain Hyman offered Plaintiff the RMAP diet. Plaintiff describes the RMAP diet as providing GMO-free foods, Dkt. No. 17 at 10, but prison officials have since clarified that the RMAP diet is not GMO-free and that none of the CDCR diets are GMO-free, Dkt. No. 20-1 at 3, 5-6. It appears that prison chaplain Hyman may have offered Plaintiff the RMAP diet pursuant to state regulations which require the CDCR to make reasonable efforts to accommodate those incarcerated persons who have been determined to require a Religious Personal Ethical Diet ("RPED") program meal, 15 Cal. Code Regs. § 3054(a), and further provides that the RMAP diet is the diet offered to incarcerated persons with a religious dietary need that cannot be met by the RPED options (vegetarian, plant-based, or kosher), or by the mainline diet, 15 Cal. Code Regs. § 3054.4(a).

United States District Court
Northern District of California

Plaintiff's beliefs, the parties should address the Ninth Circuit's observation that many of Plaintiff's canteen purchases "appear highly processed, contain artificial sounding ingredients, and are not GMO-free." *Harris*, slip op. at 6-7. Defendants shall file their supplemental briefing by April 10, 2026. Plaintiff shall file his supplemental briefing by May 11, 2026.

### CONCLUSION

For the foregoing reasons, the Court orders as follows.

1.      The Court VACATES the portion of the April 23, 2024 Order denying Plaintiff's request for a temporary restraining order and preliminary injunction (Dkt. No. 47).

2.      The Clerk is directed to REOPEN this action.

3.      The Court ORDERS the parties to file supplemental briefing addressing the topics above. Defendants shall file their supplemental briefing by April 10, 2026. Plaintiff shall file his supplemental briefing by May 11, 2026.

4.      The Court sets the following briefing schedule. Defendants shall file their dispositive motion by July 10, 2026. Plaintiff's opposition to the dispositive motion shall be filed and served no later than twenty-eight (28) days from the date the dispositive motion is filed. Defendants shall file a reply brief no later than fourteen (14) days after Plaintiff's opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the dispositive motion is due.

**IT IS SO ORDERED.**

Dated:   3/9/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

7